(80 South. 683)

## LOUISVILLE & N. R. CO. v. HARRISON.
### (7 Div. 503.)

(Court of Appeals of Alabama. Dec. 17, 1918.)

**1. NEGLIGENCE ⬤⟲1—NATURE OF.**

"Negligence" consists in the doing of an act or the omission of an act which results in damage, but without the intent to do wrong or damage.

. [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Negligence.]

**2. ANIMALS ⬤⟲48 — RUNNING AT LARGE — RIGHTS OF LANDOWNER.**

An owner's right to the use of his land is in a measure affected by the recognized right of others to allow their stock to run at large.

**3. FENCES ⬤⟲25—NEGLIGENT CONSTRUCTION —TRAP—INJURY TO ANIMALS.**

Where railroad erected fence on embankment so that strip between edge of embankment and fence gradually grew narrower until it was impossible for animal to pass farther or return backward so as to be in effect a trap to passing animals, it was liable to owner of colts injured thereby, where a reasonably prudent man might have foreseen such a result.

**4. FENCES ⬤⟲25—INJURY TO ANIMAL—NEGLIGENCE.**

Whether railroad was negligent in erecting fence on embankment, so that strip of land between fence and edge of embankment gradually grew too narrow for passage of animals accustomed to graze in vicinity of fence, depended on whether reasonably prudent man might have apprehended danger to animals by reason thereof.

**5. FENCES ⬤⟲25—DUTY OF LANDOWNER—INJURY TO DOMESTIC ANIMALS.**

Landowner is required to take notice of the natural propensity of domestic animals and to exercise reasonable care to prevent his fence from becoming dangerous, and, if it is constructed and maintained in such a manner as to constitute negligence, he is liable for injury resulting from such negligence.

**6. TRIAL ⬤⟲139(1)—AFFIRMATIVE CHARGE—EVIDENCE.**

Where there was evidence tending to support the allegations of the complaint, the court's refusal to give affirmative charge was not error.

**7. FENCES ⬤⟲25—NEGLIGENT CONSTRUCTION —INJURY TO ANIMALS.**

Where railroad erected fence on embankment so that strip between edge of embankment and fence gradually narrowed until it was impossible for animals to pass further or turn backward, it was liable for injury to animals going upon such strip, regardless of whether animals strayed upon the strip to graze, or went there in desire to go home, or whether it knew of such custom.

Appeal from Circuit Court, Shelby County; Lum Duke, Judge.

Action by W. E. Harrison against the Louisville & Nashville Railroad Company for damages to stock. Judgment for plaintiff, and defendant appealed. Affirmed.

The following is count K:

Plaintiff claims of defendant $500 as damages, for that whereas, on or about, to wit, the 1st day of May, 1914, the defendants were operating a railroad through Helena, Shelby county, Ala., and main street in said town intersected said railroad, on the right-hand side of said railroad, on the western side thereof, and about 30 yards in a southerly or southeasterly direction from said intersection, and on defendants' railroad right of way there was an embankment about, to wit, 20 feet high and about, to wit, 125 feet in length, and on top of said embankment there was a fence running practically parallel with said railroad, and said fence was about, to wit, 60 feet in length, and said fence at the southeasterly corner thereof was about, to wit, 6 feet from the edge of said embankment, but as said fence extended in a northeasterly direction in the direction of the said intersection the distance between said fence and the edge of said embankment grew less and less until a point was reached where the distance between said fence and the edge of said embankment was very narrow, to wit, only 1 or 2 feet wide, but as said fence extended still further in a northeasterly direction the distance between said fence and the edge of the said embankment grew gradually wider and wider, until the northeasterly corner thereof was reached; and at said northwesterly corner the distance between said fence and the edge of said embankment was about, to wit, 4 or 5 feet, and at said narrow space on said narrow area said embankment was about, to wit, 25 feet high, and the side of said embankment was practically perpendicular; plaintiff avers that at the southeasterly end of said area there was ample room for stock to enter upon said area and traverse the same in safety for a distance, but, as said stock reached said narrow space further north on said area, there was not room for said stock to pass further in safety nor to turn around in safety and retrace their footsteps. And plaintiff avers that on said date, and for a long time prior thereto, stock were not prohibited from running at large in and around Helena, Ala., and stock were accustomed to run at large in and around Helena, Ala. There was a great quantity of unfenced land with green grass growing thereon, and upon which stock from said Helena, Ala., were accustomed to browse and feed and were accustomed to range. And plaintiff avers that said Helena, Ala., has a population of about, to wit, 800 people, and great numbers of said citizens living in said Helena, Ala., owned cattle and stock which they were accustomed to allow to run at large and feed upon said unfenced land in and around said Helena, Ala. And plaintiff avers that on said date, and for some time prior thereto, he lived in said town of Helena, Ala., and owned the two colts hereinafter specified, and that said colts were allowed to run at large in and around said town and feed upon said unfenced land in and around said Helena, Ala., and said stock would return at night and would be placed in a stable or a

lot at night. And plaintiff avers that a part of said unfenced land with green grass and shrubbery growing thereon was immediately contiguous to the southern end or portion of said area at the southeasterly corner of said fence, and upon said unfenced land immediately contiguous to said area stock roaming at large in and around said Helena, Ala.. were accustomed to feed and range, and had been accustomed to range and feed at large for a long time prior thereto. Plaintiff further avers that on said area between said fence and the edge of said embankment grass was growing and had been accustomed to grow for a long time prior to said date. Plaintiff further avers that said railroad immediately in a southeasterly direction from said embankment ran through, into, and over a part of said unfenced land, upon which said stock were accustomed to range and roam at will, and there was nothing to prevent stock from passing from said range onto said railroad and up the same to said Helena, Ala., which was the nearest and most direct route for said stock to reach said Helena, Ala., when they were feeding upon said unfenced land immediately to the southeast of said embankment. And plaintiff avers that stock were accustomed to pass up and down said railroad in going to said range from said Helena, Ala., and in returning to said Helena, Ala., from that portion of said range. And plaintiff avers that the defendants knew, or by the exercise of reasonable diligence would have known, that cattle and stock from said Helena, Ala., thus roaming at will in said community, would likely or probably go upon said area between said fence and the edge of said embankment in feeding or browsing on said grass, or in attempting to return to said Helena, Ala., from said unfenced land immediately contiguous to said area in a southeasterly direction therefrom. And plaintiff avers that the defendants knew, or by the exercise of reasonable diligence would have known, that said stock thus going upon said area would become entrapped thereon and would probably fall over the edge of said embankment and be killed or injured. And plaintiff avers that the defendants, notwithstanding they knew, or by exercise of reasonable diligence would have known, that said stock would likely or probably go upon said area and fall over the edge of said embankment, as aforesaid, yet, nevertheless, negligently maintained said area or suffered the same to be or remain without any fence, guard, or other obstruction of any kind around the edge of said embankment to prevent stock from falling over the edge thereof, or without any fence, guard, or obstruction across the end of said area or any part thereof to prevent stock from going thereon to a dangerous point thereof. And plaintiff avers that on said date he was the owner of and in possession of one black mare colt, about one year old, and one roan horse colt, about fourteen months old. And plaintiff avers that on said date said colts entered upon said area on said embankment between said fence and the edge of said embankment, and that they went upon it at or near the southerly or southeasterly corner of said fence and were traversing, or attempting to traverse, said area between said fence and the edge of said embankment, and were going in a northerly or northwesterly direction along, over, or upon the same, in the direction of plain-

tiff's house, and when they reached said point on said embankment about, to wit, 150 feet in a southerly or southeasterly direction from said intersection there was not sufficient space for them to pass further in safety, and at said point they fell from said embankment over the edge thereof and down into said cut and upon said railroad track, or some part thereof; and said black mare colt was so injured from said fall that she died soon thereafter; and the said roan horse colt was, by said fall, badly skinned and bruised, a spot was knocked near one of his eyes, and he was rendered practically worthless—all to plaintiff's damages as aforesaid. Plaintiff avers that he suffered said injury and consequent damages by reason of and as a proximate consequence of the negligence of the defendants in causing or allowing their said premises to be, or remain, in said unsafe condition.

The following charges were refused the defendant:

(4) The court charges the jury that unless they believe from the evidence the colts went upon the strip between the fence and the embankment for the purpose of feeding and grazing, and were induced to go upon said strip for that purpose, then they should find for the defendant.

(5) Unless you believe from the evidence that the grass growing on the strip between the fence and the embankment, or the grazing afforded, attracted the colts to go there, you should find for the defendant.

(7) If you believe from the evidence that the colts went upon said strip between the fence and the embankment simply and solely for the purpose of going home, then you should find for the defendant.

(8) Unless you believe from the evidence that a sufficient amount of grass was growing upon the strip between the fence and the embankment to attract stock upon said strip, and that the plaintiff's colts were attracted upon said strip by said grass, and went upon said strip for the purpose of grazing on said grass, and unless you believe from the evidence that the defendant knew of said grass growing on said strip, or by the exercise of reasonable diligence should have known it, the jury should find for the defendant.

(13) Although the jury might believe from the evidence that stock were accustomed to go up and down said railroad in going to the range and returning from the range, still if they believe from the evidence that the colts were going up the embankment for the sole purpose of going to the range or returning from the range, then their verdict should be for the defendant.

(F) If the colts went upon said strip of land between the fence and the embankment for the sole purpose of going home, then they should find for the defendant.

(10) Unless you believe from the evidence that stock was so accustomed to go upon said strip between said fence and the embankment in going from Helena to the range and returning to Helena, or feeding or grazing upon said strip, that the defendant knew, or by the exercise of reasonable diligence should have known, that stock thus going upon said strip would become entrapped thereon and would probably fall over the edge of said embankment and be killed or injured, and unless the jury believes further from the evidence that plaintiff's colts went

upon said strip between said fence and said embankment solely for the purpose of going home or going to the range or for feeding or grazing, then your verdict should be for the defendant.

Leeper, Haynes & Wallace, of Columbiana, for appellant.

Riddle & Ellis, of Columbiana, for appellee.

SAMFORD, J. [1, 2] "Negligence," to give a cause of action, must be the doing of an act, or the omission of an act, which results in damage, but without the intent to do wrong or damage. Williamson Iron Wks. v. McQueen, 144 Ala. 265, 40 South. 306. The claim for damages in this case is based upon negligence in conjunction with the familiar maxim, "Sic utere tuo ut alienum non lædas," and the liability of the defendant is to be found in action or nonaction accompanied by knowledge, actual or implied, of the probable result of his conduct. Clardy v. Hudspeth, 89 Ark. 189, 115 S. W. 1134, 21 L. R. A. (N. S.) 702. According to the allegations of the complaint, the injury complained of was in Shelby county, where the general law of the state prevails with reference to stock running at large, and therefore, as was said in Hurd v. Lacy:

"A person's right to the use of his land is, in a measure, affected by the recognized right of others to allow their stock to run at large." Hurd v. Lacy, 93 Ala. 429, 9 South. 379, 30 Am. St. Rep. 61.

[3] If therefore the defendant erected or maintained a fence, on its premises, in so negligent a manner as to be in effect a trap to passing animals, and plaintiff's colts were injured as the natural or probable consequence of such act, and the injury was such as a prudent man must have foreseen, then the defendant would be liable. Hurd v. Lacy, supra; Sisk v. Crump, 112 Ind. 504, 14 N. E. 381, 2 Am. St. Rep. 213.

[4] The question of liability in the instant case is based on negligence, which is determined by the question whether or not a person exercising reasonable care and prudence would apprehend injury to animals by reason of the character of pocket or area described in the complaint. Hurd v. Lacy, supra; St. Louis, I. M. & S. R. Co. v. Newman, 94 Ark. 458, 127 S. W. 735, 28 L. R. A. (N. S.) 83, 140 Am. St. Rep. 134; Haughey v. Hart, 62 Iowa, 96, 17 N. W. 189, 49 Am. Rep. 138.

[5] In passing upon these questions, it must be remembered that it is the duty of the landowner to take notice of the natural propensity of domestic animals, and to exercise reasonable care to prevent his fence from becoming dangerous, and, if it is constructed and maintained in such manner as to constitute negligence, he is properly held liable. And when a fence is so constructed and maintained as to constitute a dangerous trap, into which domestic animals in search of food, or, following their natural instincts as to general directions in returning home, are liable to wander, this would constitute actionable negligence, provided, of course, there was the requisite scienter, and injury. Auxford Brown Ore Co. v. Hudson, 77 South. 243[1]; Winkler v. Carolina N. W. R. Co., 126 N. C. 370, 35 S. E. 621, 78 Am. St. Rep. 663. When considered in line with the foregoing, it will be seen that count K was not subject to the demurrer.

[6] There was evidence tending to sustain the allegations of the complaint, and hence the court did not err in refusing to give the affirmative charge as requested by the defendant.

In line with the views expressed in the foregoing opinion, the court did not err in refusing to give at the request of the defendant charges numbered 4, 5, 7, 8, 13, and F. It was not necessary to prove that the colts were induced to go on the area solely in search of grass or food; but, as was correctly stated in the oral charge of the court, if they "were induced to go there for grass or other vegetation, or by any desire to go home or going home that way," from a point near the mouth of the trap where they had been grazing, and the other allegations of the complaint were proven, then the defendant would be liable.

[7] Charge 10 does not assert a correct proposition of law as applied to the facts in this case. It is not that stock were in the habit of passing over this area in going to and returning home from the pasture lands, but was the trap between the pasture lands and the home of the stock and so maintained that, considering the natural propensity of stock, they would be liable to be caught in the trap and injured, either in wandering about in search of food, or in attempting to go home, when their instincts told them it was the time to go.

We find no error in the record, and the judgment is affirmed.

Affirmed.

[1] Ante, p. 245.